UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| RHEMA OF FOX VALLEY, LLC, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 3:25-CV-543-CHB |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION AND** |
| COMMONWEALTH OF KENTUCKY, ) | **ORDER** |
| CABINET FOR HEALTH AND FAMILY ) | |
| SERVICES, DEPARTMENT OF ) | |
| MEDICAID SERVICES, *et al.*, ) | |
| ) | |
| Defendants. ) | |

*** *** *** ***

This matter is before the Court on the Motion to Dismiss or in the Alternative for Summary

Judgment, [R. 5], filed by Defendants Commonwealth of Kentucky Cabinet for Health and Family

Services, Department of Medicaid Services, Dr. Steven J. Stack, Lisa Lee, and John Does 1-10, as

well as Defendants Attorney General Rusell Coleman and the Kentucky Office of the Attorney

General's Motion to Dismiss, [R. 6]. Plaintiffs responded, [R. 7], and Defendants replied. [R. 10];

[R. 11]. The matter has thus been fully briefed and is ripe for review. For the reasons that follow,

the Court will grant Defendants' motions to dismiss.

I.   **BACKGROUND**

This suit arises from allegations of fraudulent billing purportedly conducted by Plaintiff

Rhema of Fox Valley, LLC (hereinafter, "Rhema"). [R. 1, ⁋ 20]. Rhema operates an outpatient

program that provides addiction, recovery, and mental health services to Medicaid patients. *Id.* ⁋ 6.

Plaintiff Kanisha Leonard (hereinafter, "Leonard") is an Advanced Practice Registered Nurse

licensed in Kentucky and allegedly associated with Rhema's operations. *Id.* ⁋ 7. On September 11,

2024, Defendant Commonwealth of Kentucky, Cabinet for Health and Family Services,

- 1 -

Department of Medicaid Services (hereinafter, "CHFS-DMS") issued notices of suspension to Rhema and Leonard due to "a credible allegation of fraud relating to billing for services not rendered or performed and falsifying records." *Id.* ¶¶ 20, 24; [R. 1-1, p. 1]. As a result of these notices, Rhema was no longer paid under Medicaid for the services it provided. [R. 1, ¶ 42]; *see* [R. 1-1, p. 1]. Shortly after receiving these notices, Rhema and Leonard requested a dispute resolution meeting, [R. 1, ¶¶ 28–29], but CHFS-DMS waived the meeting pursuant to 907 KAR 1:671, Section 8(12), and issued a decision on September 26, 2024, upholding the suspension due to an open investigation by the Kentucky Office of the Attorney General's Office of Medicaid Fraud and Abuse Control. [R. 1-2, pp. 1–2]. After Rhema requested an administrative hearing, which was not held until April of 2025, the administrative hearing officer found that the notices of suspension were deficient under 907 KAR 1:671, Section 4(3) and reversed Rhema's suspension. *Id.* at 1–2, 4; [R. 1, ¶ 34]. Despite Leonard "being a provider under the umbrella of the relieved entity, Rhema," Leonard's suspension remains intact. [R. 1, ¶ 35].

According to the Complaint, CHFS-DMS's administrative action occurred as part of a coordinated effort with the Kentucky Office of the Attorney General, which had been weighing criminal charges against Plaintiff Cameron Brown (hereinafter, "Brown"), the sole member of Rhema. *Id.* ¶¶ 36, 38. The Complaint alleges CHFS-DMS's administrative proceedings were pretextual and served merely "to gather evidence for criminal prosecution while denying Brown the procedural protections that would be available in criminal proceedings," as well as to suspend Rhema's business activities. *Id.* ¶ 40. Plaintiffs Rhema, Brown, and Leonard (hereinafter, collectively, "Plaintiffs") allege they each suffered harm as a result; Rhema's Medicaid payments were suspended and escrowed for approximately eleven months, requiring Rhema to shutter its business, which had earned $6,000,000 in annual revenue, *id.* ¶¶ 42, 43; Leonard could not practice

as an Advanced Practice Registered Nurse and suffered reputational and economic harm as a result thereof, *id.* ¶ 44; and Brown underwent "invasive investigation procedures" and suffered personal and professional damage to his reputation, *id.* ¶ 45.

On August 28, 2025, Plaintiffs filed their Complaint alleging claims against numerous defendants, including: CHFS-DMS; the Kentucky Office of the Attorney General; Dr. Steven J. Sack, the Secretary of the Cabinet for Health and Family Services; Lisa Lee, the Commissioner of the Department for Medicaid Services; Russell Coleman, the Attorney General of Kentucky; and John Does 1–10, unknown state actors who purportedly participated in, directed, or authorized the actions by CHFS-DMS and the Kentucky Office of the Attorney General (hereinafter, collectively, "Defendants"). *Id.* ¶¶ 9–14. Based on the factual allegations outlined in the Complaint, Plaintiffs asserted the following causes of action: a § 1983 claim for violations of procedural due process under the Fourteenth Amendment (Count I, against all defendants in their individual and official capacities); a § 1983 claim for violations of substantive due process under the Fourteenth Amendment (Count II, against all defendants in their individual and official capacities); a § 1985 claim for "conspiracy to deprive civil rights" (Count III, against all defendants in their individual and official capacities); a claim under the Fifth Amendment regarding compelled self-incrimination (Count IV, against the Kentucky Office of the Attorney General and Rusell Coleman in his individual and official capacities); a claim under § 2 of the Kentucky Constitution for violations of due process (Count V, against all defendants in their individual and official capacities); and a claim under the Kentucky Administrative Procedures Act for failing to follow required procedures in administrative actions (Count VI, against CHFS-DMS and Dr. Steven J. Sack in his individual and official capacities). *Id.* ¶¶ 48–83. In their prayer for relief, Plaintiffs sought: a declaratory judgment that Defendants' actions violated Plaintiffs' rights under the United

States Constitution and Kentucky Constitution; a permanent injunction prohibiting Defendants from enforcing the invalid suspension notices against any Plaintiffs, requiring Defendants to restore Plaintiffs' provider status, requiring Defendants to expunge any negative records related to the deficient proceedings, and establishing procedural safeguards to prevent future similar violations; monetary damages, including compensatory damages for lost income, business losses, and other economic harm, damages for reputational harm and emotional distress, punitive damages against individual defendants in their individual capacities; and attorneys' fees and costs. *Id.* at 10.

On October 22, 2025, pursuant to the parties' Proposed Agreed Order of Partial Dismissal, [R. 8], the Court entered an Order of Partial Dismissal, [R. 9], dismissing Plaintiffs' claims against Defendants Dr. Steven J. Stack, Lisa Lee, Russell Coleman, and John Does 1–10 (collectively, hereinafter, the "Individual Defendants") in their respective individual capacities. Accordingly, any remaining claims against the Individual Defendants are solely in their respective official capacities.

Two motions are pending before this Court: (1) a Motion to Dismiss or in the Alternative for Summary Judgment, [R. 5], filed by Defendants CHFS-DMS, Dr. Steven J. Stack, Lisa Lee, and John Does 1-10 (collectively, hereinafter, the "Cabinet Defendants"), and (2) Defendants Attorney General Rusell Coleman and the Kentucky Office of the Attorney General's Motion to Dismiss, [R. 6], filed by the Kentucky Office of the Attorney General and Russell Coleman (collectively, hereinafter, the "OAG Defendants"). Plaintiffs filed a single response addressing both motions, [R. 7], and Defendants filed replies, [R. 10 (Cabinet Defendants)]; [R. 11 (OAG Defendants)]. Because both motions are fully briefed, this matter is ripe for review.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move for dismissal for "failure to state a claim upon which relief may be granted." To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible on its face" if the factual allegations in the complaint "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Determining if a complaint sufficiently alleges a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). Further, "[t]he complaint is viewed in the light most favorable to [Plaintiff], the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in [Plaintiff's] favor." *Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016) (citing *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008)).

Rule 12(b)(1) permits a litigant to contest a court's subject matter jurisdiction over a case. Fed. R. Civ. P. 12(b)(1). A challenge to subject matter jurisdiction may be brought at any time during a proceeding. *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531 (6th Cir. 2002). Motions

to dismiss based on a lack of subject matter jurisdiction take two forms. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A facial attack merely questions the sufficiency of the pleadings set forth in the complaint to support jurisdiction. *Id.* On the other hand, a factual attack raises a factual controversy that challenges the predicate basis for jurisdiction. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A district court reviewing a facial attack "takes the allegations in the complaint as true," but where a party makes a factual attack, "no presumptive truthfulness applies to the allegations [in the complaint]." *Id.* (citing *Ohio Nat'l Life Ins.*, 922 F.3d at 325).

## III.    ANALYSIS

Courts typically treat a defendant's assertion of Eleventh Amendment immunity as a threshold question of jurisdiction. *Does v. Whitmer*, 69 F.4th 300, 305 (6th Cir. 2023) ("[The Sixth Circuit] treat[s] sovereign immunity as a 'jurisdictional bar,' that, 'once raised as a jurisdictional defect, must be decided before the merits.'" (quoting *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015))). Here, because Defendants each attack this Court's subject-matter jurisdiction by raising Eleventh Amendment immunity as a defense, [R. 5, pp. 9–12, 16–18]; [R. 6, pp. 5–8], the Court will address these arguments as an initial matter.[1] And, because Defendants appear to raise facial attacks on the Court's subject-matter jurisdiction, the Court will take the allegations in the Complaint as true as it considers its subject-matter jurisdiction to hear Plaintiffs' claims. *See Gentek*, 491 F.3d at 330 (citing *Ohio Nat'l Life Ins.*, 922 F.3d at 325).

---

[1] Defendants raise additional arguments beyond their sovereign immunity for why Plaintiffs' claims fail. *See generally* [R. 5]; [R. 6]. Because the Court finds that sovereign immunity bars all remaining claims against Defendants and the *Ex parte Young* exception to sovereign immunity does not apply, *see infra*, the Court need not reach Defendants' other arguments.

### A. Sovereign Immunity

#### 1. Entity Defendants

Plaintiffs sue two state entities, CFHS-DMS and the Kentucky Office of the Attorney General (hereinafter, the "Entity Defendants"). [R. 1, ⁋⁋ 9–10]. The Eleventh Amendment immunizes states from suit, providing that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although the Eleventh Amendment does not mention lawsuits that citizens bring against their *own* states, the Supreme Court closed this gap in *Edelman v. Jordan*, where it held that a state has Eleventh Amendment immunity from a lawsuit that its own citizen brings against it in federal court. 415 U.S. 651, 662–63 (1974). The Eleventh Amendment protects against claims for relief under both federal and state law, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984), as well as claims seeking both damages and injunctive or declaratory relief, *see id.* at 101. The exceptions to Eleventh Amendment sovereign immunity are narrow, and include waiver, consent, abrogation, and *Ex parte Young*. *Id.* at 98–103; *see also Faller v. Attorney General of Kentucky*, No. 1:08-CV-86-R, 2009 WL 530646, at *4 (W.D. Ky. Mar. 3, 2009) ("There are essentially three exceptions [sovereign immunity]: (1) when the state consents to suit; (2) when Congress has abrogated a state's sovereign immunity; and (3) when under the fiction created by *Ex Parte Young*, 209 U.S. 123 (1908), a litigant seeks injunctive or prospective relief from a state officer in order to prevent future constitutional violations."). Plaintiffs only argue that abrogation under § 1983 and *Ex parte Young* applies, and the Court addresses these arguments below. *See infra* Sections III.A.2, III.B.

In their motions to dismiss, the Entity Defendants argue the Eleventh Amendment's sovereign immunity bars all claims made against them, and no exception to that immunity applies. *See* [R 5, pp. 9–12, 16–18 (CHFS-DMS's motion)]; [R. 6, pp. 5–7 (Kentucky Office of the Attorney General's motion)]. Plaintiffs' brief response, contained in a single filing addressing all Defendants' motions to dismiss, fails to address the Entity Defendants' sovereign immunity and instead solely argues no immunity applies for suits brought against officials such as the Individual Defendants. *See* [R. 7, pp. 8–9 (citing *Hafer v. Melo*, 502 U.S. 21, 30–31 (1991))]. In reply, the Cabinet Defendants and OAG Defendants each contend that *Hafer* is irrelevant and unpersuasive because the Court already dismissed all claims against the Individual Defendants in their individual capacities. [R. 10, pp. 2–3]; [R. 11, p. 3]. The OAG Defendants further argue Plaintiffs' "lack of discussion about sovereign immunity as it relates to the official-capacity claims effectively means the Plaintiffs have conceded the issue," thereby requiring dismissal of Plaintiffs' claims against them. [R. 11, p. 4 (collecting cases)].

The Court finds the Entity Defendants are immune from suit under the Eleventh Amendment. As the Entity Defendants each note, both are arms of the state to whom the Eleventh Amendment's protection applies—a contention Plaintiffs do not dispute. [R. 5, p. 11 ("[CFHS-DMS] is a state created governmental agency of the executive branch." (citing K.R.S. § 12.020(II)(8))]; [R. 6, p. 5 ("[T]he Office [of the Attorney General] is an arm of the Commonwealth . . . ." (citing K.R.S. § 15.010(1))]; *see generally* [R. 7]. Accordingly, Plaintiffs' state and federal claims for monetary and injunctive relief are barred unless Plaintiffs establish that an exception to the sovereign immunity applies here. *See Cox v. Dep't of Transp.*, 53 F.3d 146, 152 n.2 (6th Cir. 1995) ("Eleventh Amendment immunity bars all suits, whether for injunctive or monetary relief, against the state and its departments." (citing *Pennhurst*, 465 U.S. at 100–01)).

But nowhere do Plaintiffs suggest that the Entity Defendants have waived or abrogated any Eleventh Amendment immunity or consented to suit in this context, *see generally* [R. 1]; [R. 7], and the Entity Defendants' motions to dismiss note the same, *see* [R. 5, p. 11 ("Plaintiffs can point no express waiver permitting [Counts V and VI] to be brought against [CFHS-DMS].")]; [R. 6, p. 6 ("Kentucky has not waived immunity, and § 1983 claim does not abrogate State immunity." (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989)))]. Moreover, Plaintiffs' citations to *Ex parte Young* do not suggest the Entity Defendants are proper parties to this suit, as Plaintiffs' briefing correctly and repeatedly states that *Ex parte Young* permits suit against individual *officers* of the state under certain circumstances, not against the state itself. [R. 7, pp. 8–9 (asserting *Ex parte Young* "permits suit against *officials*" and does not stop suits "against individual state *officers*" (emphases added) (citation omitted))]. Taken together, the Court concludes all Plaintiffs' claims for monetary damages and injunctive relief against the Entity Defendants are barred by the Eleventh Amendment's sovereign immunity.

### 2. Individual Defendants

Plaintiffs also sue the Individual Defendants in their official capacities, various state officials who allegedly committed or assisted in the purported violations of federal and state law. [R. 1, ¶¶ 11–14]. The Court has already outlined that the Eleventh Amendment's umbrella covers the state itself, as well as state agencies, departments, and other arms of the state, *see supra* Section III.A.1, but the Eleventh Amendment's sovereign immunity also extends to state officials acting in their official capacity. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir.1994) ("A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity."); *see also Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 598 (6th Cir. 2016) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather

is a suit against the official's office, *i.e.*, against the state itself." (citation and quotations omitted)). Although Congress may abrogate the Eleventh Amendment through an "unequivocal expression of congressional intent" to do so, *Pennhurst*, 465 U.S. at 99, neither 42 U.S.C. § 1983 nor 42 U.S.C. § 1985 did so. *Faller* 2009 WL 530646, at *4 ("Congress did not abrogate states' sovereign immunity when it enacted 42 U.S.C. §§ 1983, 1985, or 1986." (citations omitted)).

In their motions to dismiss, the Individual Defendants argue the Eleventh Amendment bars Plaintiffs' claims against them in their official capacities. [R. 5, p. 12]; [R. 6, pp. 5–6]. Plaintiffs' response argues *Ex parte Young* applies and "permits suits against officials in official capacity roles" to the extent the relief sought is "prospective." *Id.* at 8. Plaintiffs further argue that "neither *Ex parte Young* nor the Eleventh Amendment can be used as a shield to stop a Section 1983 action for damages against individual state officials in their official capacities." *Id.* at 8–9 (citing *Hafer*, 502 U.S. at 30–31 (1991)). In response, the Individual Defendants point out that the Court has dismissed all claims against them in their individual capacities. *See* [R. 8]; [R. 9]. This means *Hafer* is irrelevant as to Plaintiffs' remaining claims against the Individual Defendants in their official capacities, since *Hafer* only discussed *Ex parte Young* and Eleventh Amendment immunity in the context of suits brought against officials in their *individual* capacities. [R. 10, pp. 2–3]; [R. 11, p. 3]. Further, the OAG Defendants argue that due to Plaintiffs' failure to address "sovereign immunity as it relates to the official-capacity claims," Plaintiffs have conceded the issue. [R. 11, p. 4 (collecting cases)].

The Court agrees with Defendants. As already discussed, the Eleventh Amendment's sovereign immunity extends to state officials acting in their official capacity. *See supra*; *Pennhurst*, 465 U.S. at 114 n.25; *Matthews v. Jones*, 35 F.3d at 1049. The Individual Defendants are state officials covered by this immunity, a fact Plaintiffs do not dispute. *See generally* [R. 7].

Accordingly, Plaintiffs' claims against the Individual Defendants are barred unless Plaintiffs establish an exception—waiver, consent, abrogation, or *Ex parte Young*—applies. *See Pennhurst*, 465 U.S. at 98–103. Reading Plaintiffs' Response generously, Plaintiffs appear to invoke § 1983 and *Ex parte Young* as each permitting suit against the Individual Defendants. *See* [R. 7, pp. 8–9]. But, as the Court has already noted, neither § 1983 nor § 1985 abrogated Eleventh Amendment immunity for state officials acting in their official capacities. *See supra*; *Kentucky v. Graham*, 473 U.S. 159, 169 n.17 (1985) ("[Section] 1983 was not intended to abrogate a State's Eleventh Amendment immunity." (citations omitted)); *Sykes v. U.S.*, 507 Fed. App'x 455, 462 (6th Cir. 2012) (finding that University of Cincinnati enjoyed Eleventh Amendment immunity as to a claim brought under 42 U.S.C. § 1985); *Faller*, 2009 WL 530646, at *4. And, while the *Ex parte Young* exception permits suits against state officials acting in their official capacities, the exception only authorizes injunctive relief, not damages. *See Boler v. Earley*, 865 F.3d 391, 412 (6th Cir. 2017) ("[T]he [*Ex parte Young*] doctrine does not extend to retroactive relief or claims for money damages."). The Court addresses Plaintiffs' *Ex parte Young* argument below, but the law is clear that Plaintiffs fail to establish that an exception to Eleventh Amendment immunity applies to permit suit against the Individual Defendants in their official capacities for monetary damages. The Court will therefore dismiss Plaintiffs' claims against the Individual Defendants in their official capacities for monetary damages.

On sovereign immunity grounds, the Court has dismissed all claims against the Entity Defendants as well as all the claims against the Individual Defendants in their official capacities for monetary damages. *See supra* Sections III.A.1–2. Because the Court has already dismissed Plaintiffs' claims against the Individual Defendants in their individual capacities pursuant to the parties' agreement, *see* [R. 8]; [R. 9], Plaintiffs' only remaining claims are those against the

Individual Defendants in their official capacities for injunctive relief. The Court will now consider whether the *Ex parte Young* exception applies and permits those remaining claims for relief.

### B. Ex Parte Young

Generally, a lawsuit against a state official in his or her official capacity is not against the official, but rather against the official's office, and is accordingly treated as a lawsuit against the state itself to which Eleventh Amendment immunity applies. *Printz v. United States*, 521 U.S. 898, 930–31 (1997). The *Ex parte Young* exception is grounded in the theory that unconstitutional actions by state officials are void from the start, meaning they cannot be authorized by the state; accordingly, the state official's actions are not viewed as the action of the state itself and, therefore, the state's Eleventh Amendment immunity does not apply to protect the official's actions. *See Pennhurst*, 465 U.S. at 102 (citing *Ex parte Young*, 209 U.S. 123, 160 (1908)). Specifically, the *Ex parte Young* exception to the Eleventh Amendment's sovereign immunity provides that state officials who are "clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings . . . to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action." *Ex parte Young*, 209 at 156. In other words, the exception allows citizens to sue in federal court to challenge a state official's action where that action allegedly violates the United States constitution and where the citizen seeks prospective injunctive relief. *See Pennhurst*, 465 U.S. at 102–03. The Sixth Circuit has noted that "this exception to sovereign immunity created in *Ex parte Young* has been read narrowly," *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421, 445 (6th Cir. 2019), and it "'does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute,'" *id.* (quoting *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996)). "There

must be a 'realistic possibility the official will take legal or administrative actions against the plaintiff's interests.' . . . General enforcement authority is insufficient." *Id.* (quoting *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1048 (6th Cir. 2015)).

In their motions to dismiss, Defendants argue Plaintiffs are not entitled to injunctive relief under *Ex parte Young* because "no Cabinet officials are continuing or threatening to continue to engage in the conduct of which the Plaintiffs complain," [R. 5, p. 18], and because "there is no ongoing violation of federal law by the Attorney General to enjoin" and "the relief the Plaintiffs seek is effectively *retrospective* or would intrude into the Commonwealth's proceedings," [R. 6, p. 7 (emphasis in original)]. Plaintiffs' response agrees that *Ex parte Young* only "permits suits against officials in official capacity roles" to the extent the relief sought is "prospective," [R. 7, p. 8], and further cites to *Hafer* for the proposition that *Ex parte Young* cannot "be used as a shield to stop a Section 1983 action for damages against individual state officials in their official capacities," *id.* at 8–9. Defendants' replies each aptly point out that *Hafer* addressed suits against state officials in their *individual* capacity, not their official capacity, *see* [R. 10, p. 2 (describing *Hafer* as deciding "whether the Eleventh Amendment . . . barred a suit against a state official sued in his or her individual, i.e., personal capacity")]; [R. 11, p. 3 ("The quoted language from *Hafer v. Melo* . . . only indicates that the Eleventh Amendment is not a barrier to suits seeking to impose individual or personal liability—that is, claims against an official in their individual capacity.")]. Defendants make the further point that because all claims against the Individual Defendants in their individual capacities have been dismissed, [R. 10, p. 3]; [R. 11, p. 4]; *see* [R. 8]; [R. 9], *Hafer* does not support Plaintiffs' position. Additionally, the OAG Defendants suggest that in light of Plaintiffs' failure to address other components of the defendants' *Ex parte Young* arguments (i.e., the lack of ongoing violations and the retrospective nature of the relief sought), "Plaintiffs have

conceded the issue" of sovereign immunity as it relates to the official-capacity claims against the Individual Defendants. [R. 11, p. 4 (collecting cases)].

The Court agrees with Defendants that Plaintiffs' response amounted to no response at all. Plaintiffs failed to point to any allegations that might support application of the *Ex parte Young* exception. Nowhere do Plaintiffs argue or allege a "realistic possibility" the Individual Defendants "will take legal or administrative actions against [their] interests," *Russell*, 784 F.3d at 1048, or that such actions have been "threaten[ed]" or are "about to commence," *Ex parte Young*, 209 U.S. at 156. As a result, and as the OAG Defendants point out, Plaintiffs have conceded the *Ex parte Young* issue because they have utterly failed to address it. *See* [R. 11, p. 4 (collecting cases)]. Because "a plaintiff generally concedes a defense when they fail to respond to the defendant's argument," *4th Leaf, LLC v. City of Grayson*, 425 F. Supp. 3d 810, 823 (E.D. Ky. 2019), and because Plaintiffs do not address Defendants' assertions regarding the lack of ongoing or imminent violations and the retrospective nature of much of Plaintiffs' relief sought, the Court finds all claims for injunctive relief against the Individual Defendants in their official capacities fail to meet the narrow exception to sovereign immunity under *Ex parte Young*, and must therefore be dismissed.

## IV.    CONCLUSION

For the above-stated reasons, the Court will grant Defendants' motions to dismiss and will dismiss all claims against all defendants in this matter. Accordingly, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1.    The Motion to Dismiss or in the Alternative for Summary Judgment, [**R. 5**], filed by Defendants Commonwealth of Kentucky Cabinet for Health and Family

Services, Department of Medicaid Services, Steven J. Stack, Lisa Lee, and John Does 1-10, is **GRANTED**.

2. Defendants Attorney General Rusell Coleman and the Kentucky Office of the Attorney General's Motion to Dismiss, [**R. 6**], is **GRANTED**.

3. All remaining claims against Defendants are **DISMISSED WITH PREJUDICE**.

4. A separate Judgment shall enter.

This the 22nd day of May, 2026.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY